## ADAMS, (LARNED v.)

[See Larned v. Adams, Case No. 8,092.]

---

## Case No. 59.
### ADAMS v. LAWRENCE CO.
### WOODS v. SAME.
[7 Pittsb. Leg. J. 145; 2 Pittsb. R. 60.]

Circuit Court, W. D. Pennsylvania. Nov. 17, 1859.

RAILROAD COMPANIES — MUNICIPAL AID—COUNTY BONDS — BONA FIDE HOLDERS — CONSTRUCTION OF STATUTE.

1. The act of assembly of 9th July, 1853, section 7, authorizing certain counties to subscribe

to the capital stock of the North-Western Railway Company, which provides that the counties may "make payments on such terms and in such manner as may be agreed upon by said company and the proper county," confers, by such provision, full authority upon the county to issue coupon bonds in payment of such subscription.

2. All doubts as to this being the proper construction of the said section dispelled by the following considerations: 1st, Because the legislature themselves have so construed it, the proviso to the said section being "that whenever bonds of the respective counties are given in payment of subscriptions, the same shall not be sold by said railroad company at less than par value," &c., which shows that the legislature took it for granted that the issue of bonds was intended to be included in the brief but comprehensive expression of the "manner in which payment may be made." 2d, All parties concerned have treated this as the true construction, and have acted under it accordingly. 3d, The matter has been before the supreme court of the state. (8 Casey, [32 Pa. St.] 144,) and it does not there appear that the county ought to have the bonds enjoined as made without authority. The decree there is based on the doctrine that these bonds are binding on the county in the hands of bona fide holders.

3. The said bonds, so issued, in the hands of bona fide holders, who have obtained them at their market value, are not affected by the proviso of the act, "that whenever bonds of the respective counties are given in payment of subscriptions, the same shall not be sold by said railroad company at less than par value."

At law.

Geo. P. Hamilton and W. O. Leslie, for plaintiffs.

R. B. McCombs and Lewis Taylor, for defendant.

GRIER, Circuit Justice. These cases were tried together at the last term of this court in May. The plaintiffs sued as holders of coupons of interest due on certain bonds issued by Lawrence county, the defendant. There was not much dispute as to the facts on the trial. The two great questions involved were: First. Had the commissioners of Lawrence county legal authority to issue the bonds given in evidence; and, Second. If they had, how far the fact that the bonds were disposed of for less than their par value should affect the plaintiffs' right to recover. In order that the court might have time for a more careful consideration of the questions, the jury were requested to bring in a special verdict, subject to the opinion of the court on these questions.

The execution of the bonds and coupons not being disputed, the jury returned a verdict finding the disputed facts, and assessing damages under three conditions, subject to the opinion of the court.

First. They find that the bonds were disposed of by the railroad company, at twenty-five per cent. less than their par value, and if the court shall be of opinion that the commissioners of Lawrence county had authority, under the act of 9th July, 1853, and the recommendation of the grand jury, as given in evidence, to issue the bonds, and that the

plaintiff has a right to recover the whole amount of the coupons declared on, notwithstanding the fact, as above stated, then they find a verdict of $1,958 60.

Second. But if the court should be of opinion that plaintiff can recover only in the same ratio that the bonds were sold—for less than their par value—then the court to enter a verdict and judgment for $1,468 95.

Third. But if the court shall be of opinion that by reason of the sale of said bonds for less than their par value, the plaintiff is not entitled to recover anything, they will enter a verdict for defendant.

First. The question as to authority is one of great importance, as it affects not only a large number of bonds, issued by the county defendant, but the counties of Beaver and Butler, which are in the same category. The act of assembly, referred to in the verdict, of 9th July, 1853, is that which provides for "incorporating the Northwestern Railroad Company." The third section enacts that the company shall have a right to construct a railroad from some point on the Pennsylvania or Allegheny Portage Railroad, west of Johnstown, by way of Butler, to the Pennsylvania and Ohio state line, to some point on the western boundary of Lawrence county, &c. The seventh section, which alone confers any power on counties to subscribe for stock in this railroad, is as follows:

"Section 7.—That the counties, through parts of which said railroad may pass, shall be, and they are hereby severally authorized to subscribe to the capital stock of said railroad company, and to make payments on such terms and in such manner as may be agreed upon by said company and the proper county. Provided, that the amount of subscription by any county shall not exceed ten per cent. of the assessed valuation thereof; and that before any such subscription is made, the amount thereof shall be fixed and determined by one grand jury of the proper county, and approved by the same; upon the report of such grand jury being filed, the county commissioners may carry the same into effect by making, in the name of the county, the subscription so directed by the said grand jury: Provided, that whenever bonds of the respective counties are given in payment of subscriptions, the same shall not be sold by said railroad company at less than par value, and no bonds shall be in less amount than one hundred dollars, and such bonds shall not be subject to taxation until the clear profits of said railroad shall amount to six per cent. upon the cost thereof, and that all subscriptions made or to be made in the name of any county, shall be held and deemed valid, if made by a majority of the commissioners of the respective counties."

The presentment of the grand jury is as follows: "The grand inquest of Lawrence county, Pennsylvania, did, on the 21st of May, 1853, make the following resolution: "Resolved, That the commissioners of the coun-

ty of Lawrence, state of Pennsylvania, be and are hereby recommended to subscribe stock to the North Western Railroad to the amount of two hundred thousand dollars, agreeably to the act of assembly incorporating said North Western Railroad Company, and to issue bonds for the payment of said stock, making the conditions such as will best promote the interest of said railroad company and the county of Lawrence."

1. As to the authority to the officers of the county to make subscription to the stock of the railroad and issue the bonds now in question. The constitutional authority of the legislature of Pennsylvania, at the time this act was passed, to delegate to the county, or its officers, the powers necessary to legal execution and binding force of such securities, is no longer an open question. Does this act of assembly, on a fair construction of its terms, confer such an authority on the commissioners of Lawrence county?

First. It is not disputed that Lawrence county comes within the description of the act. It is one "of the counties through parts of which the said railroad may pass."

Second. This county, represented by its officers, "the commissioners or a majority of them," is authorized "to subscribe to the capital stock and make payment on such terms and in such manner as may be agreed upon by said company and the proper county."

That this very general, indefinite, but comprehensive language of the act will include the power as exercised by the commissioners in this case, and that it is intended to do so, I have no doubt. No man ever expected or supposed that any county would become a stockholder in any other way than by borrowing money; their credit was all they could contribute. This would be done only by the issue of some sort of securities, well known in the money market. It was in this "manner" alone that any person supposed that these county corporations could "make payment." The form of coupon bonds was undoubtedly the best for all concerned, as this would give the bonds a higher value in the money market than any other.

It has been contended with much force, that in a legislative body, whose statutes are more usually obscured by a multiplication of words than by indefinte brevity, it cannot be presumed that so great and dangerous and corrupting a power was intended to be delegated in such vague language. It was easy to say, that the commissioners should have authority to pledge the credit of the county by the issue of bonds with coupons for the payment of interest half yearly, if the legislature so intended. That the power "to make payment on such terms and in such manner" may be satisfied, in many ways, without such an expansive construction as has been given to it. Besides it cannot be presumed that the extent of authority granted to the county commissioners, or the mode of its execution,

would, by any prudent legislature be conferred on them at the discretion of a private corporation. That here was an attempt to delegate legislative power to them, if they may dictate the "manner" in which such a vague and dangerous power may be exercised. I must confess that when this question was first ventilated these and other arguments of defendant's counsel had caused much doubt in my mind, insomuch that the court offered to certify a division of opinion in order to have the matter fully settled at Washington. And, perhaps, if the case before me were a bill to enjoin the commissioners from issuing these bonds, I might have come to a different conclusion, but after consultation with my colleague, and more mature consideration, the doubts at first entertained have been dispelled.

First. Because a legislative construction has been given of this same section showing that they did intend to authorize the issue of bonds in the name of the county. Modern legislation can seldom be understood without carefully noting the provisos. Instead of exceptions the provisos often contain the very pith and marrow of the statute, which without it would be unintelligible or absurd. Here the proviso clearly shows that the legislature took it for granted that the issue of bonds was intended to be included in the comprehensive, but brief and costive expression of the "manner" in which payment may be made.

Second. All parties concerned have treated this as the true construction, and have acted under it accordingly. The bonds have been issued, without a whisper of dissent as to the power of the commissioners to make them, and this sharp construction is not demanded till the convenience of total repudiation has been discovered. But the court will not now repudiate their own practical construction of the law, to enable them to repudiate the obligations made under it.

Third. This matter has been before the supreme court of the state. (See [County of Lawrence v. North-Western R. Co.] 8 Casey, [32 Pa. St.] 144.) In that case it does not appear that the county ought to have these bonds enjoined, because made without legal authority. The ground alleged in the bill, and proven to the satisfaction of the court, was the gross fraud practiced by the officers and first subscribers of stock to that company. The decree in that case is based upon the doctrine that these bonds are binding on the county in the hands of bona fide holders. That point seems to have been conceded both by court and counsel. Else why decree that the company should pay to the county the par value of the bonds and interest due, if they do not surrender them?

The objection that the grand jury have not "fixed and determined" the amount to be subscribed, but only "recommended," is a verbal criticism, which might well have been

urged on a bill to restrain the action of the commissioners. If acts of assembly are drawn in such a careless slip shod style, how can we expect accuracy of expression in the report of a grand jury. They no doubt intended it as a literal compliance with the statute—it was accepted and acted upon as such. In such a case a court ought not to be astute in verbal criticism to release parties from their contracts, after their faith has been pledged for the redemption of these securities and value received for them.

II. The bonds having been executed by the commissioners according to the powers conferred on them, and delivered to the railroad company in payment of stock, who have paid them to contractors, who have again passed them to laborers and other bona fide holders, for their market value, how are they affected by the last proviso, of the act, "that whenever bonds of the respective counties are given in payment of subscriptions, the same shall not be sold by said railroad company, at less than par value." On the trial, the fact that the plaintiff was a bona fide holder of these bonds, was not put in issue, and is assumed in the special verdict, which "finds the bonds that were disposed of by the railroad company, at twenty-five per cent. less than the par value." This is a duty imposed on the railroad company, the original payer of the bonds. The company receives them at their par value for stock in the road, which is presumed to be a complete equivalent. But if the bonds, which are received as cash, are not of that value, it would be a fraud on the other stockholders, who paid in money or its equivalent, if the county could pay for a hundred dollars of stock in a depreciated currency worth only seventy-five dollars. Besides, the bonds being made negotiable security, payable to bearer, the county, would have to pay their bond and interest, whether that bond purchased a hundred dollars worth of work or materials, or only fifty. This is no condition precedent, which affects the covenants on the bonds. It assumes that the bonds have been issued and given in payment of stock, and imposes this prohibition as a restraint upon both the county and the railroad. The county should not subscribe unless they are sure that the state of the money market is such that their securities will be worth par—nor should the railroad accept subscriptions to be paid in such securities, unless they were equivalent to the cash paid by other stockholders. Now, if these bonds were expected to be mere common bonds, not negotiable, but passing only as an equitable interest to the assignee, this proviso of the act would have been unnecessary, as the county might have set up this as a defense against the company and their assignees. It would not effect a forfeiture of the bond, but the county might well plead that it would pay no more to the company than it had contributed to the stock by its bond. It is apparent, also, that the imposition of this duty upon the railroad is founded on the fact that the bonds given to them would be negotiable securities, to be put into the market as a sort of currency, and binding the obligor to pay the bearer according to the exigency of the bond. The proviso evidently assumes that fact, and is founded on that hypothesis. The recitals of the bonds are to show the power of the commissioners or agents of the county to bind it by subscriptions for stock, and pledging the faith of the county by such public securities. If the power has been legally executed, the bearer to whom the county has contracted to pay has no concern with intermediate holders. Whether the commissioners and the company may (one or both) have been guilty of fraud in issuing these securities, the bearer or bona fide holder need not inquire. If the corporation has wronged the county in this transaction, it does not concern the holder of the bond. He has a right to presume that both parties have acted honestly, and according to duties prescribed to them by the act. The bearer of the bond who has purchased it in market for its market value, has a right to say to the county: You have put forth your bonds in the shape of a negotiable security payable to bearer; you have covenanted to pay me certain sums at certain times; you have delivered these securities or sold them for certain stock; you have your consideration; I have your bond. If the railroad has cheated you, see you to it. It is no concern of mine. "It is not so written in the bond." It appears by the report of the case above cited, that these bonds were fraudulently obtained by the officers of the railroad company, and that the company was ordered to deliver up all the bonds in their possession, and to pay the par value of all the bonds put in circulation by them. Why has the county asked for such a decree, and why should the court have made such a decree, unless upon the admitted principle that the county were bound to pay such of these securities as were put in circulation according to the exigency of their contract? That, though technically bonds, yet by the custom of the country they were negotiable securities, and the county, by the letter and spirit of their contract, were bound to pay the bearer the whole amount. The face of the bond gave notice to every one who received it, on what legal authority it purported to be executed. A purchaser was bound to inquire whether the bonds were executed by persons having authority to pledge the faith of the county. Their delivery may be presumed from the fact that they are found in the market; whether the agents of the county or the railroad had been guilty of fraud or folly in the course of their transaction, were facts of which the face of his bond did not put the holder on the inquiry, and the knowledge of which would not affect his legal right to recover. The county cannot make a speculation out of the folly or fraud of their agents, as they certainly

would if they recover the amount of their bonds from the company, and themselves refuse to pay them to the legal holder. They cannot allege in one court, as foundation for a decree, that they are bound to pay the bonds, and deny it, when sued on the bonds in another. The court are of opinion, therefore, that, according to the conditions of the special verdict, the plaintiff has a right to judgment for the sum of $1,958 60, and so order.